PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  1:20CR410 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| GIANNI GRAY, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving  ECF No. 22] |
| | ) | |

Pending before the Court is Defendant Gianni Gray's Motion to Suppress (ECF No. 22). The Court denied Defendant's motion to suppress.  The Sixth Circuit vacated that ruling and remanded the case with for further proceedings.  Subsequently, the Court held another hearing and required the parties to file supplemental briefing.  *See* January 17, 2025 Min. of Proceeding; United States' Post-Hearing Brief in Opp'n to Def.'s Mot. to Suppress Evid. (ECF No. 130); and Def.'s Post-Hearing Brief on Mot. to Suppress (ECF No. 132).  For the reasons set forth, the Court denies Defendant's motion to suppress the third gun.

## I.      Background

Law enforcement officers executed a warrant that resulted in the arrest of Defendant and seizure of two guns.  Post-appeal, the Government conceded that the warrant was barebones and that the two guns seized, pursuant to it, were seized unconstitutionally.   During a protective sweep, however, a third gun was spotted.  The officers obtained a second search warrant before seizing the third gun.

(1:20CR410)

Defendant was indicted for the illegal possession of all three guns, but only the third is at issue.[1]  Against this backdrop, the Court determines whether the second warrant provided officers with an independent basis to seize the third gun.

## II.  Standard of Review

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" U.S. CONST. amend IV.  The Fourth Amendment, however, "is silent as to the remedy afforded one whose property is searched or seized subject to a warrant lacking probable cause." *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021).  "To enforce the Constitution's probable-cause requirement, the Supreme Court long ago recognized the exclusionary rule—that is, the rule that bars courts from allowing unlawfully seized evidence to be used in a criminal trial—as the 'principal judicial remedy' for Fourth Amendment violations by federal officers." *Id*. (citations omitted).

When the government performs an unlawful search, the exclusionary rule precludes the introduction of tangible materials seized.  *Weeks v. United States*, 232 U.S. 383, 393-94 (1914), *abrogated on other grounds by Elkins v. United States*, 364 U.S. 206, 210 (1960).  The "fruit of the poisonous tree" doctrine is an offshoot of the exclusionary rule.  *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996).  The fruit of the poisonous tree doctrine "bars evidence which, though not obtained in an illegal search, was derived from information or items obtained in the

---

[1] The Sixth Circuit's vacatur required the Court to suppress the other two firearms seized.  *See* Order (ECF No. 103).

2

(1:20CR410)

search." *Id*. (citation omitted).  "As the use of the word 'derived' suggests, the doctrine extends

to evidence not directly obtained in an illegal search." *Elmore, 18 F.4th at 199*.  Along these

lines, "to determine whether evidence should be excluded as fruit of the poisonous tree, [courts]

ask whether the evidence 'has been come at by exploitation of the underlying illegality or instead

by means sufficiently distinguishable to be purged of the primary taint." *Id*. (citing *Wong Sun v.

United States*, 371 U.S. 471, 488 (1963)).

The independent source doctrine provides one rationale under which the government can

admit evidence originally obtained in or derived from an illegal search.  *Id*.  The independent

source doctrine allows evidence to be admitted if the government can show that it was

discovered through sources "wholly independent of any constitutional violation." *United States

v. Jenkins, 396 F.3d 751, 757 (6th Cir. 2005)* (quoting *Leake, 95 F.3d at 412*).  The basis of the

independent source doctrine is that "police who carry out a search that they should not have

carried out should be put in the same, but *no worse*, position than they would have been in absent

any error or misconduct." *Jenkins, 396 F.3d at 758* (emphasis in original) (citation omitted).

For the government to show "that the independent source doctrine applies to a warrant

based on both legally and illegally obtained information, the government must make two

showings by a preponderance of the evidence." *United States v. Williams*, 656 F. App'x 751, 753

(6th Cir. 2016) (citing *United States v. Siciliano, 578 F.3d 61, 68 (1st Cir. 2009)*).  "[T]he

government must show that the initial illegal search did not prompt officers to seek a warrant for

the second search." *Williams, 656 Fed. App'x at 753* (citing *Murray v. United States*, 487 U.S.

533, 542 (1988)). "This is a fact-based inquiry that requires the district court to assess the

record." *Id*.  (citing *Murray, 487 U.S. at 540 n.2*).  The Government must also prove "that a

neutral magistrate would have issued the search warrant even if she was not presented with the

information obtained in the illegal search." *Id*.  (citing *Jenkins, 396 F.3d at 761*).  To determine

3

(1:20CR410)

whether the judge would have issued the second federal search warrant in the absence of the

prior illegality, the Court "'excis[es] the illegally obtained information from the affidavit and

then decid[es] whether the remaining *legally* obtained information sufficiently supports a finding

of probable cause to search.'" *Williams*, 656 F. App'x at 753–54) (alteration in original) (citing

*Jenkins*, 396 F.3d at 760).

### III.  Analysis

### A.  The Illegal Search Did Not Prompt the Search for the Third Gun

"[E]vidence initially discovered during an unlawful entry need not be excluded if it is

later obtained through a valid warrant-based search that is independent of the initial violation."

ECF No. 132 at PageID ##: 923-24 (citing *Murray*, 487 U.S. at 533).  Because evidence

"obtained pursuant to a search warrant that relied, in part, on unlawfully obtained information

may nevertheless be admissible under the independent-source doctrine." *United States v.*

*Chapman-Sexton*, 758 F. App'x 437, 440-41 (6th Cir. 2018).   Most importantly, "if the

application for a warrant contains probable cause apart from the improper information, then the

warrant is lawful and the independent source doctrine applies, providing that the officers were

not prompted to obtain the warrant by what they observed during the initial entry." *Id*. at 441

(citing *Jenkins*, 396 F.3d at 758).

### i.      Probable Cause Exists without Paragraph 18

"The review of the sufficiency of the evidence supporting probable cause is limited to the

information presented in the four corners of the affidavit." *United States v. Ray*, 577 F. App'x

526, 531 (6th Cir. 2014) (citing *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)); *see*

*also Jenkins*, 396 F.3d at 760 (holding "[a] court determining the sufficiency of an affidavit in

support of a search warrant is concerned only with the statements contained within the affidavit

itself," and tainted information must be eliminated from consideration).

(1:20CR410)

The application for the second warrant included, among other things, Paragraph 18 which states:

> 18. Affiant avers that on May 5, 2020, the FBI's Violent Fugitive Task Force executed the arrest warrant for Wanda Buriguette-Downs at the premises of 12113 Union Avenue. Gianni Gray was located at the premises and was placed under arrest.  Officers performed a protective sweep of the premises and observed a 'tommy gun' and revolver in the living room and another firearm in the basement.

*See* Aff. for Search Warrant (Exhibit A) (ECF No. 108-1 at PageID ##: 695-98).  There is no dispute that Paragraph 18 references the illegal search.  When Paragraph 18 is removed, as it must be, the affidavit provides probable cause for officers to believe that Defendant resided at the searched premises and to permitted them to search for "unlawfully kept, concealed, and possessed firearms, ammunition, cellular phones or electronic devices, any clothing and any other evidence tending to establish a violation of the laws of the State of Ohio, to wit, R.C. 2903.02, Murder" at the searched premises.  ECF No. 108-1 at PageID #: 695; *see also Williams, 656 F. App'x at 753–54*.

### ii.     Anonymous Tips and Confidential Source Information were Corroborated

Defendant argues that the affidavit is still insufficient because it contains "uncorroborated anonymous tips" that cannot establish probable cause, but that argument fails.  As the Sixth Circuit observed,  "[r]arely can an anonymous tip by itself constitute a basis for reasonable suspicion[, let alone probable cause] . . . because an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *United States v. Hudson,* 405 F.3d 425, 432 (6th Cir. 2005) (citing *Fla. v. J.L.,* 529 U.S. 266, 270 (2000) and *Alabama v. White,* 496 U.S. 325, 329 (1990)).  In this case, the anonymous tips offered foundational context that other sources

5

(1:20CR410)

corroborated. In other words, the Government did not rely solely on anonymous tips to establish

probable cause as in *United States v. Leake*, 998 F.2d 1359, 1367 (6th Cir. 1993).[2]

Here, an anonymous tipster described the last name and alias/nickname of Defendant, his

residence, body and facial shape, and the vehicle at his residence. Investigators acted to validate

the vehicle and ran the license plate with help from the Garfield Heights Police Department.

After Garfield Heights Police Department observed the vehicle and ran the license plate, the

affiant obtained a LERMS report identifying Defendant. That photo also revealed characteristics

similar to those described by the anonymous tipster. Another tipster provided that the homicide

was in retaliation to a separate double-homicide in which Defendant's brother had been

murdered. Later, the investigators verified that the victim of the homicide in question was a

suspect in the double-homicide.

The affidavit in support of the second warrant also relies on information obtained from a

confidential informant who provided a fair likelihood that Defendant resided at the searched

premises. When a search warrant relies on information obtained from a confidential source to

establish probable cause, the issuing judge must have a basis for finding that the source is

reliable or credible and was able to know the information provided. *United States v. Dyer*, 580

F.3d 386, 390 (6th Cir. 2009); *see also Illinois v. Gates*, 462 U.S. 213, 233 (1983) (concluding

that a confidential informant's reliability and basis of knowledge are "relevant considerations in

the totality-of-the-circumstances analysis"); *United States v. Allen*, 211 F.3d 970, 972-73 (6th

Cir. 2000) (emphasizing that courts must consider a "totality of the circumstances" approach in

---

[2] In *Leake*, police received an anonymous phone call explaining that the defendant
observed a large stash of marijuana in the basement, and then police later obtained a search
warrant that solely relied on the information from the anonymous telephone call without
verifying the information that had been received.

(1:20CR410)

reviewing an affidavit, and that a "line-by-line scrutiny of an underlying affidavit is . . . inappropriate.") (citations omitted).  An informant's reliability may be established by a statement that the informant previously provided reliable information or by independent corroboration of the informant's information.  *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006); *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (recognizing that facts permitting the reviewing judge to determine the informant's reliability "need not take any particular form").

In this case, the confidential informant provided a reasonable basis for investigators to believe that Defendant resided at the premises searched.  Law enforcement confirmed that the property was affiliated with an accomplice or alias of Defendant, and that the prior owner had been the mother of Defendant's first child.  Investigators also confirmed that a new mailbox had been installed at the searched premises.  The investigators sufficiently corroborated the anonymous tips and confidential informant's information to find them reliable.

In other words, with the tainted text excised, the affidavit independently provides probable cause for search and seizure of the third gun.

The Court finds that the search warrant affidavit established probable cause for officers to search for and seize the third gun.

### B.  The Illegal Search Did Not Substantially influence the Issuance of the Second Warrant

Defendant's argument that the warrant lacks probable cause because tainted text influenced the judge's decision-making also fails.  "[E]vidence obtained pursuant to a search warrant that relied, in part, on unlawfully obtained information may nevertheless be admissible under the independent-source doctrine."  *Chapman-Sexton*, 758 F. App'x at 440-41.  "[I]f the application for a warrant contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, providing that the officers were

7

(1:20CR410)

not prompted to obtain the warrant by what they observed during the initial entry." *Id*. at 441

(citing *Jenkins*, 396 F.3d at 758).

Defendant has not shown that Paragraph 18 affected the judge's decision in a

"substantive, meaningful way." *Jenkins*, 396 F.3d at 758.  Rather, Defendant makes a

conclusory statement that the Court should not find that the search warrant provided officers with

probable cause because the search warrant affidavit contains information from the illegal search.

But, as discussed above, "the simple fact that an application for a warrant contains information

obtained from an illegal search does not by itself signify that the independent source doctrine

does not apply." *Id*.[3]  Evidence obtained from an illegal search does not become "sacred and

inaccessible." *Leake*, 95 F.3d at 411-12 (citing *Silverthorne Lumber Co. v. United States*, 251

U.S. 385, 392 (1920)).  "[T]he government can show that evidence that might be excluded under

the fruit of the poisonous tree doctrine should be admitted under another rationale." *Id*. at 412.

This ensures that the government "is not put into a *worse* position simply because of some earlier

police error or misconduct[.]" *Id*. (alteration in original) (quoting *Nix v. Williams*, 467 U.S. 431,

443 (1984)).

Sergeant Haven and Detective Cottom's testimony corroborate the independence of the

second warrant.  Under oath, each explained their independent bases to search Defendant's

residence.  ECF No. 130 at PageID #: 911.  Defendant's belief that the "subsequent lawful search

_____

[3] In evaluating a judge's decision-making under the independent source exception, the Sixth Circuit joined all other circuits reading of *Murray*. *Jenkins*, 396 F.3d at 758 ("All courts of appeals to have considered the matter, however, have interpreted *Murray* to mean that, in these situations, for evidence to be inadmissible due to the government's failure to collect it via an independent source, the tainted information presented to the judge must affect the judge's decision in a *substantive,* meaningful way.") (alteration in original).

8

(1:20CR410)

was not truly independent" but "was directly motivated by discoveries from the initial unlawful

entry" goes against the weight of the evidence.  ECF No. 132 at PageID #: 926.

Testimony of the officers' involved is probative of determining whether the illegal search

prompted the search warrant.  "[T]he Supreme Court has instructed district courts not to give

dispositive effect to officer assurances that a warrant would have been sought in the absence of

the illegal search."  *Williams*, 767 Fed. App'x at 753.  "Instead, 'where the facts render officer

assurances implausible, the independent source doctrine will not apply.'"  *Id*.  (quoting *Murray*,

487 U.S. at 540 n.2).

The record reveals that Defendant's whereabouts had been under investigation for two

years, and officers believed they had finally located him.  *See* Suppression Hr'g Tr. (ECF No.

129 at PageID ##: 814, 856).  The affidavit supports a finding that the initial search did not

prompt the later search, because the later search warrant sought more than firearms.  It sought the

seizure of cellular phones, other electronic devices, and clothing used in the homicide.  Detective

Cottom testified that she had information tying Defendant to the searched premises.  She

believed that it was owned by a company closely associated with a known alias of Defendant and

that the premise had previously been owned by the mother of Defendant's child.  *See also*  ECF

No. 129 at PageID #: 862.  This information was solidified by the surveillance done prior to the

illegal search.  Furthermore, Sergeant Haven testified that he knew a search warrant would be

executed at the residence before arriving to the residence.  ECF No. 129 at PageID #: 145

(testifying, "a search warrant was going to be obtained and executed at that residence.  I already

knew that would happen.  It happens with our Homicide Unit on the regular.  We discuss this

beforehand.").  Sergeant Haven also testified that he did not feel he needed to obtain a search

warrant before arriving to the residence, because he "believed that we had probable cause to

9

(1:20CR410)

enter and arrest him on the arrest warrant", and that officers "were only looking for

[Defendant's] body at the time."  ECF No. 129 at PageID #: 850.

When the investigation of Defendant (before the illegal search), the affidavit (minus

Paragraph 18), and the testimony of Detective Cottom and Sergeant Haven are considered

together and, in their totality, it is evident that law enforcement obtained the second warrant

independent of the information learned during Defendant's arrest.  Considering the information

*legally* obtained, the Court concludes that the independent source doctrine applies.  Because the

independent source doctrine applies, the Court need not review the Government's good-faith

exception argument.[4]

## IV.  Conclusion

Finding that the affidavit in support of the second warrant provides probable cause based

on information learned independent of the illegal search, and that the illegal search did not

prompt or substantially influence the issuance of the second warrant, the Court denies

Defendant's Motion to Suppress (ECF No. 22) the third gun.


IT IS SO ORDERED.


| July 24, 2025 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[4] Defendant's post-hearing brief explains this well when it states: "the exclusionary rule is intended to deter unlawful conduct without unnecessarily hampering law enforcement efforts; it ensures that officers are not left in a worse position than they would have been if no constitutional breach had occurred. By applying the independent source doctrine, the Court balanced the need to deter police misconduct with the public interest in admitting all probative evidence at trial, thereby allowing evidence re-obtained through a genuinely independent search to be admitted.  *Murray v. United States*, 487 U.S. 533 (1988)."  ECF No. 132 at PageID #: 924.